UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JANE DOE, ON BEHALF OF ) <br> JAN DOE, A Minor ) <br> Plaintiffs, ) <br> ) <br> -vs- ) <br> ) <br> DALLAS INDEPENDENT SCHOOL ) <br> DISTRICT; LILLIANA SOLANO, ) <br> INDIVIDUALLY and in her OFFICIAL ) <br> CAPACITY as HILLCREST H.S. ) <br> REGISTRAR; CHRIS BAYER, ) <br> INDIVIDUALLY and in his OFFICIAL ) <br> CAPACITY as HILLCREST H.S. PRINCIPAL ) <br> VON HARRIS, INDIVIDUALLY and ) <br> In his OFFICAL CAPACITY as ) <br> HILLCREST H.S. HEAD BASKETBALL ) <br> COACH; ANDY TODD, INDIVIDUALLY ) <br> And in his OFFICIAL CAPACITY ) <br> ATHLETIC COORDINATOR; AND ) <br> SIDNEY BOUVIER GALSTRAP-PORTLEY ) | Case No: _____ <br><br><br> **DEMAND FOR JURY** |

**PLAINTIFFS' ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, JANE DOE, on behalf of JAN DOE ("J.D."), a minor, (referred to as "Plaintiffs"), and files this Original Complaint and Request for Disclosure complaining of Defendants, DALLAS INDEPENDENT SCHOOL DISTRICT ("DISD"); LILLIANA SOLANO ("Solano") Individually, and in her Official Capacity as Registrar; CHRIS BAYER ("Bayer") Individually, and in his Official Capacity as Principal; VON HARRIS ("Harris") Individually, and in his Official Capacity as Head Basketball Coach; ANDY TODD ("Todd") Individually, and in his Official Capacity as Athletic Coordinator;

; and SIDNEY BOUVIER GILSTRAP-PORTLEY ("Portley"); (collectively referred to as "Defendants"), and in support thereof would show the Court the following:

## I. PRELIMINARY STATEMENT

1. This is a civil action for declaratory, injunctive, equitable, and monetary relief for Injuries sustained by Plaintiffs as a result of acts and omissions of Defendant DISD, Defendant Solano, Defendant Bayer, Defendant Harris, Defendant Todd, and Defendant Portley, relating to sexual assault, battery, molestation, harassment, and discrimination by Defendant Portley against Plaintiff J.D.

## II. PARTIES

2. Plaintiff,. JANE DOE, Individually and on behalf of JAN DOE, a minor is an individual who resides in Dallas County, Texas.

3. Defendant, DALLAS INDEPENDENT SCHOOL DISTRICT ("DISD"), Is an Independent School District created under the laws of the State of Texas. Defendant may be served with process by serving Dr. Michael Hinojosa, Dallas ISD Superintendent, or Justin Henry, President of the Board of Trustees, at 9400 North Central Expressway, Dallas, Texas, 75231, under the authority of Texas Civil Practice & Remedies Code §17.024(c). Service will be by process server. Service is hereby requested.

4. Defendant, LILLIANA SOLANO, is an individual residing in Dallas County. Solano is the Registrar for Hillcrest High School in DISD. Service will be by process server. Service is hereby requested.

5. Defendant, CHRIS BAYER, is an individual residing in Dallas County. Bayer was the Principal of Hillcrest High School in DISD. Service will be by process server. Service is hereby requested.

6.	Defendant, VON HARRIS, is an individual residing in Dallas County. Harris was the 2017-2018 Head Boys Basketball Coach of Hillcrest High School in DISD. Service will be by process server. Service is hereby requested.

7.	Defendant, ANDY TODD, is an individual residing in Dallas County. Todd was the 2017-2018 Athletic Coordinator of Hillcrest High School in DISD. Service will be by process server. Service is hereby requested.

8.	Defendant, SIDNEY BOUVIER GILSTRAP-PORTLEY, is an individual residing in Dallas County.  Service will be by process server. Service is hereby requested.

### III. JURISDICTION AND VENUE

9.	Plaintiffs invoke the jurisdiction of this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. §1986, 42 U.S.C. §1988, and 28 U.S.C. §1331,  as this cause arises under the laws of the United States providing for the protection of Civil Rights, and may be enforced against all Defendants, herein named, through § 5 of the Fourteenth Amendment to the United States Constitution. Further, the unlawful actions alleged in this cause were committed in the Northern District of Texas, and, therefore, venue is proper pursuant to 18 U.S.C. § 1391.

10.	Defendant DISD is a public school district organized and existing under the laws of the State of Texas.  Texas statutory law requires, not later than the 90th day before a person files suit against a professional employee of a school district, written notice of the claim must be given to the employee reasonably describing the incident from which the claim arose. Texas Education Code Annotated §22.0513.

### IV.	NATURE OF ACTION

11. This is a civil rights action for damages brought pursuant to 42 U.S.C. § 1983, 42

U.S.C. § 1985, 42 U.S.C. § 1986, and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and related state law claims, against the above-named Defendants for their wrongful acts and omissions, committed in Defendant Portley's individual capacity and was permitted to happen pursuant to Defendants', DISD, Solano, Bayer, Harris, and Todd's unconstitutional policies, customs, and procedures resulting in a state-created danger which lead to the sexual assault, battery, molestation, harassment, and discrimination by Defendant Portley against Plaintiff J.D.

## V.  FACTUAL BACKGROUND

12. This case arises from the sexual assault, battery, molestation, harassment, and discrimination of the Plaintiff J.D. by Defendant Portley during the 2017-2018 school year, due to the unconstitutional policies and procedures of Defendants DISD, Solano, Bayer, Harris, and Todd, which created a dangerous environment for Plaintiff J.D.

13. Defendant Portley was allowed to perpetrate his unthinkable acts on Plaintiff J.D. due to Defendants', DISD, Solano, Bayer, Harris, and Todd's unconstitutional policies, customs, and procedures which resulted in the unverified, expedited admission of a person who claimed to be a homeless, 17-year-old high school freshman, but was actually a 25-year-old adult.

14. Defendant Portley was admitted into two other High Schools in Defendant DISD's district prior to being admitted into Hillcrest High School where he was admitted over the objection of the school's registrar, Defendant Solano. Defendant DISD's Athletic Coordinator, Defendant Todd, Hillcrest H.S. Head Basketball Coach, Defendant Harris, and then Hillcrest H.S. Principal, Defendant Bayer, overruled the registrar's decision not to admit Defendant Portley, in order to have him play on the school's basketball team. Defendant Portley has been

vocal about how he was able to get into Hillcrest, alluding to the fact that Defendants DISD, Bayer, Harris, and Todd were instrumental in creating the "homeless" story.

15. Defendant DISD's school, Hillcrest High School, is smaller in terms of enrollment compared to other Dallas ISD schools. In fact, due to the small number of students attending Hillcrest High School, the basketball program did not require individuals to try out in order to be on the team. Therefore, Defendant Portley was able to walk on to the team and, after impressing school officials by beating most of the team's current players in a pick-up match, Defendants knew they had to have Defendant Portley play for Hillcrest High School using any means necessary to have him enroll.

16. Defendants may attempt to claim ignorance regarding any possible red flags that could have alerted them to the fact that Defendant Portley was not who he claimed to be. However, any reasonable person can take one look at Defendant Portley and tell he was not like the other teenage students attending Hillcrest High School. Defendant Portley has excessive tattoos covering his arms, legs, hands, and portions of his face. Defendant Portley also had a bigger build compared to the other teenage students at Hillcrest High School. Defendants may also attempt to claim Defendant Portley did not spend any time on campus and would only show up for basketball practice and games. The lack of attendance at school outside games, in and of itself, would put any reasonable school official on alert that they needed to pay attention to this particular student. Attendance at school is mandatory and can affect a student's eligibility with U.I.L. to play on an athletic team. While Defendants may attempt to claim Defendant Portley was not on campus, there are videos all over the internet, taken by students at Hillcrest High School, showing Defendant Portley was in school for more than just basketball practice and games.

17.     Defendant Dallas Independent School District has a past of deliberately ignoring rules regarding who should be enrolled in its district, or simply not verifying the students being admitted. In the past, Defendant DISD has improperly recruited and allowed student athletes outside of its district to be enrolled in its schools in order to have those students play for DISD's athletic programs. Defendant DISD has a pattern of unconstitutional policies, customs, and practices regarding who it admits into its schools when the enrollee can potentially be a star athlete. Over the past 2 decades, this practice has not only lead to Defendant DISD being stripped of numerous athletic awards, but also, constantly puts its students' safety and well-being at risk.

18.     Defendants DISD, Harris, and Todd intentionally disregarded U.I.L. rules by not conducting a home visit of Defendant Portley's residence, as they were required to do for a new transfer student, attempting to play at a new school. Had this been done, Defendants would have seen Defendant Portley was not homeless and was living with his Fiancé, child, and was not Rashun Richardson as he claimed. This is just another example of Defendants ignoring the red flags and being consciously indifferent to who was enrolled in their school because Defendant Portley was an outstanding basketball player compared to the minors he played against.

19.     During the eight months Defendant Portley was enrolled in one of Defendant DISD's schools, he had numerous encounters and inappropriate sexual relationships with multiple minor students, Plaintiff J.D. being one of those students.

20.     A student athlete at Hillcrest High School reported to Britney Fletcher, the head softball coach, that Defendant Portley was having an inappropriate relationship with one of her friends. In actuality, the "friend" was the female student speaking with Ms. Fletcher.

Fletcher told this student "she could tell Defendant Portley was not the age he claimed because he seemed older." When the student asked Britney Fletcher for advice on how to handle the inappropriate relationship, she was instructed "I personally would not say anything because he did not hurt anybody."

21. Defendant Portley gained popularity amongst the other students and faculty because he was the top player on the school's basketball team. During his time at Hillcrest High School, Defendant Portley was able to meet, prey on, and have sexually inappropriate relationships with multiple students, including Plaintiff J.D. All of this impermissible conduct was allowed to occur as a result of the unconstitutional policies and procedures of Defendants DISD, Solano, Bayer, Harris, and Todd, all of whom ignored the obvious red flags that would have caused any reasonable person to verify the veracity of Defendant Portley's claims.

22. During the 2017-2018 school year, Defendant Portley met, groomed, and started an inappropriate sexual relationship with 14-year-old Plaintiff J.D. while attending Hillcrest High School.

23. During this relationship, Defendant Portley would call and text Plaintiff J.D., would pick Plaintiff J.D. up from Defendants' school and also from her grandmother's home. Defendant Portley would take Plaintiff J.D. to secluded areas where he would have inappropriate sexual contact with the minor child by kissing, and touching her breast and buttocks. Defendant Portley coerced Plaintiff J.D. into touching his sexual organ for his own sexual gratification. Defendant Portley was also seen on campus at Hillcrest High School, kissing and inappropriately touching Plaintiff J.D. in the middle of the hallway, with other students and teachers watching.

24. Due to Defendants', DISD, Solano, Bayer, Harris, and Todd interest in having an unstoppable basketball team, which would likely lead to more notoriety, and more monetary grants to the school, the Defendants showed deliberate indifference when they failed to protect the interest and safety of its students by violating their ministerial duties and not verifying who they were admitting into their school and by allowing Defendant Portley to walk amongst their students. Defendants DISD, Solano, Bayer, Harris, and Todd did not "ensure a safe and clean school environment at all times," culminating in Defendant Portley's inappropriate relationship and sexual contact with the underage Plaintiff J.D.

25. Because the policies and procedures of Defendants DISD, Solano, Bayer, Harris, and Todd created a dangerously discriminatory environment that allowed the inappropriate sexual contact to be perpetrated against Plaintiff J.D. by Defendant Portley, Plaintiff J.D. has suffered severe emotional distress, mental anguish, and psychological trauma that will affect her for the rest of her life and has required her to seek medical treatment.

26. Plaintiff J.D. has not been able to return to this school due to humiliation and embarrassment, which was caused by the actions and omissions of the Defendants. Due to the popularity Defendant Portley gained through playing on the basketball team at Hillcrest High School, many of the students and teachers knew of the relationship between Defendant Portley and Plaintiff J.D. Since the revelation of Defendant Portley's deception, Plaintiff J.D. became a pariah at her school, causing Plaintiff J.D. to leave her friends, teachers, and other classmates at Hillcrest High School and attempt to continue her education at another school where she will not be recognized and reminded of what the Defendants allowed to happen to her.

## VI. CAUSES OF ACTION

**COUNT 1:    VIOLATION OF TITLE IX or THE EDUCATION ACT OF 1972, 20 U.S.C. § 1681 et. Seq. (AGAINST DEFENDANTS DISD, SOLANO, BAYER, HARRIS, AND TODD IN THEIR PROFESSIONAL CAPACITIES).**

27.    Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

28.    Title IX, 20 U.S.C. § 1681(a) provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

29.    Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities.

30.    Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature. "It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

31.    Plaintiffs qualify as persons within the meaning of 20 U.S.C. § 1681(a).

32.    Defendants DISD, Solano, Bayer, Harris, and Todd receive financial assistance for their education program and are therefore subject to the provisions of Title IX of the Education act of 1972, 20 U.S.C. § 1681, et seq.

33.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students, and third parties.

34.    Defendant Portley's actions and conduct happened due to the unconstitutional policies, customs, and practices of Defendants DISD, Solano, Bayer, Harris, and Todd, all of whom ignored the obvious red flags that would have caused any reasonable person to verify the veracity of Defendant Portley's claims, thereby, allowing for the creation of an unsafe

environment for Plaintiffs.

35. Defendant Portley's sexual assault, battery, molestation, and harassment of Plaintiff J.D., including the sexual penetration, massaging of breasts, buttocks, vaginal areas, and sexual coercion constitutes sexual discrimination and harassment under Title IX.

36. Defendants DISD, Solano, Bayer, Harris, and Todd owed Plaintiffs duties under Title IX, including the duties not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, and other sexual misconduct.

37. Upon information and belief, "appropriate persons" in DISD, within the meaning of Title IX, and including but not limited to administrators, teachers, and coaches, had actual and constructive notice of the sexual assault, battery, molestation, and harassment committed by Defendant Portley during the 2017-2018 school year.

38. Defendants DISD, Solano, Bayer, Harris, and Todd acted with conscious indifference and in a clearly unreasonable manner by failing to complete ministerial duties and verifying they had accurate and complete records of Defendant Portley prior to enrolling him in their school, and allowing him to roam the halls amongst minor children, which created an unsafe environment for Plaintiff J.D., resulting in Plaintiff J.D. being sexually coerced, harassed, and assaulted by Defendant Portley. By not verifying who they were allowing to roam amongst the halls of underage students, Defendants DISD, Solano, Bayer, Harris, and Todd knew there was a substantial risk that an incident of this nature could occur.

39. This indifference is further evident through the conversation a minor student athlete had with one of her coaches when she attempted to make a complaint about Defendant Portley. The minor student sought the advice of Softball Head Coach, Britney Fletcher, in how to deal

with the issue of Defendant Portley having inappropriate relationship with a student. Fletcher advised the minor student "not to say anything or worry about it because [Defendant Portley] did not hurt anybody."

40. Defendants DISD, Solano, Bayer, Harris, and Todd failed to investigate and address the concerns and complaint of the minor student as required by Title IX.

41. Since the removal of Defendant Portley from Hillcrest High School, Defendants DISD, Solano, Bayer, Harris, and Todd failed to offer counseling services to current or former students who may have been affected by Defendant Portley. Instead, Defendants have been seen on T.V. discussing the adverse effect Defendant Portley would have on the future of their basketball team while ignoring the devastating effect his presence had on DISD's female students, including Plaintiff J.D.

42. As a direct and proximate result of the aforementioned conduct, Plaintiff J.D. suffered emotional distress, anguish, and psychological trauma she will suffer for the rest of her life including, but not limited to: severe depression, PTSD, severe anxiety, and an inability to concentrate and focus.

**Count 2:    STATE CREATED DANGER (AGAINST DEFENDANTS DISD, SOLANO, BAYER, HARRIS, and TODD IN THEIR PROFESSIONAL CAPACITY).**

43. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

44. Defendants are also liable to Plaintiff J.D. under the state created danger theory. The Supreme Court has made it clear that the Due Process Clause of the Constitution was intended to protect people from the State and not to have the State protect people from each other. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 196 (1989). Under *DeShaney,* the government has no duty to protect citizens from deprivations of liberty by third parties, except where (1) the government has custody of the individual and has a duty of

care based on that custodial special relationship or (2) the government took affinitive steps which put the individual in danger. *Id at 198-202*. This is called the special relationship exception. *Id at 196*.

45.     Plaintiff J.D. qualifies for the special relationship exception because Defendants DISD, Solano, Bayer, Harris, and Todd placed Plaintiff J.D. in a position of danger by intentionally disregarding ministerial duties they was bound to see through, allowing Defendant Portley access to the school and numerous minor students which he preyed upon during the 2017-2018 school year; dismissing the reports of other students regarding Defendant Portley's inappropriate relationship with underage students; and intentionally ignoring U.I.L. rules that would have revealed the true identity of Defendant Portley due to the unconstitutional policies, customs, and practices followed by Defendants pertaining to how they admitted potential star athletes into their school. These unconstitutional actions taken by Defendants Solano, Bayer, Harris, and Todd, were the moving force behind how Defendant Portley was able to gain access to underage female students whom he, as a 25-year-old adult, preyed upon, leading to the sexual assault of Plaintiff J.D.

46.     Defendant Bayer, as principal, failed to complete his ministerial duty to ensure a safe and clean school environment at all times.  Due to Defendant Portley's prowess on the basketball court, Defendant Bayer chose not to request records from Defendant Portley's previous school, thereby allowing a 25-year-old access to an entire high school of teenage girls whom he preyed upon while being idolized by school officials for bringing notoriety to their basketball team.  Defendant Portley also brought marijuana and a loaded weapon to school telling students "selling weed is how I support my aunt and nephew." The

unconstitutional policies, customs, and practices of Defendant Bayer were the driving force which allowed Defendant Portley the ability to sexually assault Plaintiff J.D.

47. Defendant Solano failed to follow her ministerial duty of maintaining complete and accurate records on each student enrolled at Hillcrest High School. If Defendant Solano contacted the registrar for South Houston High School ("SHHS") when Defendant Portley attempted to enroll at Hillcrest High School, she would have been immediately discovered that Defendant Portley never attended SHHS. The unconstitutional policies, customs, and practices of Defendant Solano, failing to verify the records of Defendant Portley, a star athlete, was one of the driving forces that allowed Defendant Portley the ability to sexually assault Plaintiff J.D.

48. Because of Defendant Portley's skill on the basketball court, Defendants Harris and Todd intentionally ignored U.I.L. regulations which would have shed light on his true identity, for instance, performing a "home visit" as required for each transfer student who attempts to play for a new school. At the time Defendant Portley enrolled as a "homeless student" at DISD, he was living with his fiancé and newborn child in an apartment near the school The apartment has photos of Defendant Portley and his fiancé portraying them as a couple who are currently in a relationship and not as family members. Defendants also ignored the U.I.L. regulations regarding Defendant Portley's Previous Athletic Participation Form ("PAPF"). The P APF requires information about a student and requires the last school of the student's participation to certify and release the student to play at the new school. Had Defendants not been instituting unconstitutional policies, customs, practices, they would have verified Defendant Portley's claims regarding his status as a former student at SHHS in the Pasadena Independent School District, and determined that

Defendant Portley was not a homeless refugee of Hurricane Harvey as he claimed. Although Defendants Harris and Todd claim they spoke with an "unnamed" coach at SHHS and were given documentation to verify Defendant Portley's enrollment at SHHS, the spokesman for Pasadena Independent School District, immediately came out to rebuke the assertions made by Defendants. The unconstitutional policies, customs, and practices of Defendant Harris and Todd were the driving force which allowed Defendant Portley the ability to sexually assault Plaintiff J.D.

49.     Britney Fletcher failed to report the inappropriate relationship Defendant Portley was having with a minor student when it was brought to her attention, and showed deliberate indifference to the complaint of an inappropriate relationship by telling the student who sought her counseling and advice "not to say anything because [Defendant Portley] did not hurt anyone.

50.     Defendants DISD, Solano, Bayer, Harris, and Todd allowed a state created danger to manifest due to their unconstitutional policies, customs, and practices whereby they allowed student athletes, with the potential to bring awards and notoriety to the athletic program, that claim to be homeless or fleeing a natural disaster, to be enrolled without doing any type of verification to ensure the person really is who they are claiming to be. To cover their tracks and provide a weak rationale for being consciously indifferent, the Defendants may claim the McKinney-Vento Act prevents them from requiring the transfer student to provide identifying documentation. However, the McKinney-Vento Act does not prevent the Defendants from contacting the previous school a transfer-student claims to have attended to get documents from that previous school to verify the identity and enrollment of the transfer student. Further, the Defendants' desire to have a winning

basketball team, considering the two decade long unconstitutional, unethical practice of bringing in students who do not belong in their district, clouded their judgment when Defendant Portley arrived on campus. Defendants DISD, Solano, Bayer, Harris, and Todd showed conscious indifference to the complaint of an inappropriate relationship and the obvious red flags that would have caused any reasonable administrator to verify the veracity of Defendant Portley's claim. Due to the unconstitutional policies, customs, and practices of Defendants, Defendant Portley was able to sexually assault Plaintiff J.D.

**Count 3:    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST DEFENDANTS DISD, SOLANO, BAYER, HARRIS, TODD AND PORTLEY)**

51.  Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

52.  Defendants are liable for intentional infliction of emotional distress due to their intentional and reckless actions causing the Plaintiffs severe emotional distress. Additionally, the Defendants' conduct in giving Defendant Portley unverified access to young children and allowing Defendant Portley to continually inflict harm on Plaintiff J.D. was extreme and outrageous, and the conduct of Defendants caused Plaintiff J.D.'s emotional distress.

53.  Defendants were so driven to have an unstoppable team, as has been the past at several DISD schools, they intentionally ignored all the red flags which would have caused any reasonable school official, who cared more about student safety than basketball victories, to verify the veracity of Defendant Portley's claims.

54.  The unconstitutional policies, customs, and practices of Defendants were the driving force which allowed Defendant Portley the ability to sexually assault Plaintiff J.D.

**COUNT 4:   SEXUAL ASSAULT AND BATTERY (AGAINST DEFENDANT PORTLEY)**

55.     Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

56.     Defendant Portley committed indecency with a child, sexual abuse, sexual assault, and sexual battery against Plaintiff J.D. Defendant Portley committed these acts intentionally and knowingly.

57.     Defendant Portley would take J.D. off campus for food and while away from the school Defendant Portley would stop at a nearby park where he would coerce Plaintiff J.D. into touching his penis while he would touch her breast, buttocks, vaginal area, and made many attempts to have sexual intercourse with Plaintiff J.D.

58.     The psychologically shocking, humiliating, and severe nature of the sexual abuse committed by Sidney on J.D., has caused her to sustain severe emotional, and psychological damage that she will carry with her for the rest of her life, including, but not limited to: severe depression, PTSD, severe anxiety, inability to concentrate and focus, night terrors, extremely low self-esteem and self-image issues. Issues which required her to seek medical treatment.

**COUNT 5:   GROSS NEGLIGENCE (AGAINST DEFENDANTS SOLANO, BAYER, HARRIS, TODD, AND PORTLEY, IN THEIR INDIVIDUAL CAPACITY)**

59.     Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

60.     Defendants' conduct described herein constitutes gross negligence as defined in the Texas Civil Practice & Remedies Code § (11)(A)&(B). Defendants' negligent conduct was more than momentary thoughtlessness or inadvertence. Rather, Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm Defendant Portley had actual, subjective awareness of the risk involved

when he committed the assault, just as Defendants Solano, Bayer, Harris, and Todd had actual, subjective awareness of the risk involved when they rushed to enroll Defendant Portley into Hillcrest High School due to his basketball prowess, without verifying the veracity of his claims, as has been the unconstitutional custom, policy, and practice in DISD. Further, Britney Fletcher (employee of the district) had actual, subjective awareness of the risk involved when she showed conscious indifference to the complaint made by a student about Defendant Portley having an inappropriate relationship with a minor student.

## VII.  DAMAGES

61. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

62. Defendants' egregiously wrongful conduct resulted in and proximately caused injury to Plaintiff J.D., including but not limited to, damage to her personal, social, sexual and educational relationship, sexual dysfunction, extreme emotional distress, loss of self-esteem, a negative impact on her ability to sustain employment, predilection to abuse drugs and alcohol, severe mental injuries and emotional trauma including chronic anxiety and depression, and diminished quality of life. For this Plaintiff's seeks the following damages:

   a. Past and future medical expenses;
   b. Mental, physical and psychological pain and suffering in the past and future;
   c. Past and future mental anguish; and
   d. Exemplary damages;
   e. Cost of suit and fees as allowable by law;
   f. Attorney's fees under 42 U.S.C. § 1988; and
   g. Expert fees under 42 U.S.C. § 1988

63. Plaintiffs seek damages allowed in the Northern District of Texas in an amount

within the jurisdictional limits of the Court. The damages include past and future physical pain and mental anguish, past and future severe psychological pain and suffering, past and future emotional distress, and past and future medical expenses.

## IX.  EXEMPLARY DAMAGES

64. The conduct of Defendants was more than momentary thoughtlessness, inadvertence, or error of judgment, and was of such a character as to make Defendants guilty of, at the very minimum, gross negligence. Defendants' acts or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others of which Defendants had actual awareness, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, and Plaintiffs therefore sue for the maximum amount of exemplary damages in the amount determined by the trier of fact.

65. Defendants knowingly placed Plaintiff J.D. in a dangerous situation by not verifying who they were enrolling in their school and showed deliberate indifference to the health and safety of its students, including Plaintiff J.D., when they rushed to enroll Defendant Portley into their school without verifying his identity and ignoring the obvious red flags that would have caused any reasonable person to verify the veracity of Defendant Portley's claims. Defendants also acted with conscious indifference to the complaint about a minor having an inappropriate relationship with Defendant Portley made to Defendant Fletcher. Defendants did all of this knowingly and intentionally. It was foreseeable that someone could be harmed by their gross negligence. Defendants' knowledge and intentional conduct allows Plaintiffs to recover exemplary damages from Defendants.

## X.  PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

66.     Plaintiffs hereby request and demand that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including contracts, list of donors, emails, minutes of meetings, memoranda, correspondence, financial records, diagrams, maps, photographs, videotapes, audiotapes, recordings, invoices, checks, files, facsimiles, voicemails, text messages, calendar entries, log books, or information related to the reference incident. Failure to maintain such items shall constitute "spoliation" of the evidence.

## XI.     PRE-JUDGMENT AND POST-JUDGMENT INTEREST

67.     Plaintiffs seek pre- and post-judgment interest as allowed by law.

## XII.     CONDITIONS PRECEDENT

68.     All conditions precedent to Plaintiffs' right to recover the relief sought herein occurred or have been performed.

## XIII.     DEMAND FOR JURY TRIAL

69.     Plaintiffs demand a trial by jury as to each and every cause of action against each and every Defendant and tender the appropriate fee with this Complaint.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that Defendants be cited to appear and required to answer herein accordingly to law; that this cause be set for trial by jury; that Plaintiffs recover judgment of and from said Defendants for their actual damages in this cause in such amounts as the evidence may show and the Jury may determine to be proper, together with costs of suit, pre- and post-judgment

interest; and for all such other and further relief, both in equity and law, to which Plaintiffs may show that they are justly entitled.

Respectfully submitted

**The Milton Law Firm, PLLC**

Dated: December 31, 2019

By /s/ Mai Mullen Milton

Mai Mullen Milton, 24079011
Attorney for Plaintiffs
2111 S. Collins Street, Suite 201
Arlington, Texas  76010
682 235-0242 – Office/Fax
AttorneyMMilton@MMiltonlaw.Com